Eric G. Wallis (CSBN 67926)
David H.S. Commins (CSBN 124205)
Kit L. Knudsen (CSBN 154714)
COMMINS & KNUDSEN, P.C.
492 9th Street, Suite 200
Oakland, CA 94607
Tel (510) 823-2208
eric@commins.com
david@commins.com
kit@commins.com

Attorneys for Plaintiff
City-Core Hospitality, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CITY-CORE HOSPITALITY, LLC,

       Plaintiff,

vs.

CHARLES PALMER; MILL CREEK
HOSPITALITY, LLC; CHARLIE PALMER
ENTERPRISES, INC.; EATWELL
ENTERPRISES LP; CHARLIE PALMER
GROUP; PALMCO MANAGEMENT,
INC.; 61 RESTAURANT CORP.; 34
EQUITIES, LTD.; AUREOLE
INVESTMENT, LP; LODGEWORKS
PARTNERS L.P.; LODGEWORKS
PARTNERS CORPORATION; DRY
CREEK KITCHEN LLC; and RLJ
LODGING TRUST,

       Defendants.

    and

PALMER CITY-CORE HOTELS,
LLC,

       Nominal Defendant.

**COMPLAINT**

1. **Federal Unfair Competition**
2. **California Unfair Competition**
3. **California False or Misleading Statements**
4. **Common Law Unfair Competition**
5. **Breach of Licensing Contract**
6. **Breach of the Covenant of Good Faith and Fair Dealing**
7. **Tortious Interference With Contract**

**DEMAND FOR JURY TRIAL**

COMMINS & KNUDSEN
PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

- 1 -

COMPLAINT

Plaintiff City-Core Hospitality, LLC (CCH) alleges as follows:

## NATURE OF ACTION

1. This is an action to redress violations of the federal Lanham Act for federal unfair competition (15 U.S.C. §1125(a)), California unfair competition (Cal. Bus. & Prof. Code §17200), the dissemination of false and misleading statements (Cal. Bus. & Prof. Code §17500), common law trademark infringement and unfair competition, breach of contract, breach of the covenant of good faith and fair dealing, and tortious interference with contract as the result of willful and unauthorized use by Defendants of the trademark and colorable imitations of the trademark CHARLIE PALMER for hotel, catering, bar and restaurant services. Plaintiff seeks preliminary and permanent injunctive relief restraining Defendants' unfair competition, a constructive trust, monetary damages, attorneys' fees and related relief.

## THE PARTIES

A.      Plaintiff and Nominal Defendant

2. CCH is a Nevada limited liability company and a 50 percent member and manager of Palmer City-Core Hotels, LLC.

3. Nominal Defendant Palmer City-Core Hotels, LLC (PCCH) is a Delaware limited liability company that is engaged, directly and indirectly, in the ownership and management of two premier hotels and related restaurants that bear the trademark CHARLIE PALMER. Specifically, PCCH owns an indirect 100 percent interest in the "Mystic Hotel by Charlie Palmer" in San Francisco, California; owns an indirect 28 percent interest in the "Harvest Inn by Charlie Palmer" in Napa Valley, California; and owns and controls various rights to operate and manage these hotels and their related restaurants.

COMMINS & KNUDSEN
PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1        4.      Because PCCH is 50 percent managed by Defendant Mill Creek

2  Hospitality, LLC (Mill Creek), a California Limited Liability Company for which Defendant

3  Charlie Palmer is the sole and managing member, the claims set forth herein are derivative, since

4  demand on the manager Mill Creek is futile and should be excused.  PCCH cannot approve of

5  pursuing the litigation without Mill Creek's approval, which Mill Creek will not provide given

6  that the claims asserted herein are against it and a person and entities related to it, and those

7  claims seek to impose liability on such Defendants.

8

9  B.     <u>The Palmer Group</u>

10

11        5.      Defendant Charles Palmer Enterprises, Inc. (Palmer Enterprises) is a New

12  York corporation and the registered owner of the CHARLIE PALMER trademark for hotels,

13  restaurants, bars and catering, including CHARLIE PALMER HOTEL, CHARLIE PALMER

14  STEAK, and CHARLIE PALMER GROUP.

15

16        6.      Defendant Charles "Charlie" Palmer (Palmer) is an individual residing in

17  California.

18

19        7.      Mill Creek is a California limited liability company.  Mill Creek is a 50

20  percent member and manager of PCCH.

21

22        8.      Defendant Eatwell Enterprises, L.P. (Eatwell Enterprises) is a New York

23  limited partnership.

24

25        9.      On information and belief, Defendant Charlie Palmer Group is a New

26  York corporation.

27

28

COMMINS & KNUDSEN
PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

- 3 -

10.     On information and belief, Defendant Palmco Management, Inc. (Palmco Management) is a New York corporation.

11.     Defendant 61 Restaurant Corp. is a New York corporation.

12.     Defendant 34 Equities, Ltd. is a New York corporation.

13.     Defendant Aureole Investment, LP is a Delaware limited partnership

C.     Palmer-Related Defendants

14.     On information and belief, Defendant LodgeWorks Partners L.P. is a Kansas limited partnership.

15.     Defendant LodgeWorks Partners Corporation is a Kansas corporation.

16.     On information and belief, Dry Creek Kitchen LLC is a Delaware limited liability company.

17.     RLJ Lodging Trust is a Maryland real estate investment trust the form of which is unknown to Plaintiff.

18.     Upon information and belief, at all times herein mentioned, each of the Defendants was the agent, co-venturer or partner of each of the other Defendants, and in doing the things hereinafter alleged, was acting within the course and scope of such agency and with the permission and consent of his, or its Co-Defendants.

COMMINS & KNUDSEN
PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

- 4 -

## JURISDICTION AND VENUE

19.    This Court has subject matter jurisdiction over Plaintiff's claim under and pursuant to 15 U.S.C. §1121 and 28 U.S.C. §1338(a), as the claims arise under the federal Lanham Act, 15 U.S.C. §§1116-1127.  This Court also has pendent jurisdiction over all related claims herein in accordance with 28 U.S.C. §1338(b).

20.    Upon information and belief, Defendants, either directly or through their agents, transacted business in the State of California and within this judicial district, as more specifically set forth below, and expected or should reasonably have expected their acts to have consequences in the State of California and within this judicial district.

21.    Venue is proper in this district pursuant to 28 U.S.C. §1391(b), as Defendants are doing business in this judicial district and therefore may be found in this district, or a substantial part of the events giving rise to the claims alleged herein occurred in this judicial district, or the unfair competition occurred in this judicial district.

## INTRADISTRICT ASSIGNMENT

22.    Pursuant to Civil Local Rule 3-2(c) this is an intellectual property matter which is to be assigned on a district-wide basis.

///

///

///

COMPLAINT

1

2

## ALLEGATIONS COMMON TO ALL CLAIMS

3   A.      PCCH's 25-Year Exclusive CHARLIE PALMER License For The Hotel, Restaurant,

4           Bar, And Catering Business

5

6          23.     Palmer had made previous efforts to brand CHARLIE PALMER before

7   meeting Richard Kaufman and Andrew Garay, both principals in CCH.  In 1998, Palmer had his

8   businesses Eatwell Enterprises and Palmco Management register CHARLIE PALMER in

9   International Class 30 for meat sauces, United States Patent and Trademark Office (USPTO)

10  Registration Number 2228928.  Palmer had been operating a restaurant called AUREOLE in

11  New York, but neither he nor his entities had ever applied to register CHARLIE PALMER in

12  International Class 43 (restaurant, catering, bar and hotel services) before he went into business

13  with Kaufman and Garay in 2007.

14

15         24.     Palmer was introduced to Kaufman and Garay during 2007 in connection

16  with a potential hotel restaurant project in Las Vegas, Nevada.  Kaufman and Garay had been

17  successful real estate developers and Palmer, a "celebrity chef," offered to contribute his name –

18  CHARLIE PALMER – by consenting to file an application with the USPTO to federally register

19  his name as a trademark for hotels, restaurants, bars and catering services.  The parties agreed to

20  form a business entity for the purpose of licensing that intellectual property.  The Parties

21  intended, among other things, to open multiple CHARLIE PALMER-branded hotels and

22  restaurants.

23

24         25.     To that end, on May 7, 2007, Palmer, Garay and Kaufman formed PCCH.

25  Mill Creek and CCH are the sole members and managing members of PCCH.  PCCH's

26  "purpose," according to its Operating Agreement, was "to license intellectual property of the

27  company."

28

COMMINS & KNUDSEN
PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

- 6 -

26.     In furtherance of that purpose, the very next day, Charlie Palmer caused his wholly-owned corporate entity, Palmer Enterprises, to file an application for the trademark CHARLIE PALMER HOTEL, at the USPTO, Serial Number 77175143, in International Class 43 (hotel, restaurant, bar and catering services).  Palmer's written consent to use his name as a trademark was submitted to the USPTO by Palmer Enterprises.

27.     At the same time, in May 2007, Palmer Enterprises and PCCH (the Parties) entered into a 25-year Master Trademark License Agreement for CHARLIE PALMER HOTEL "for use in conjunction with boutique hotel, resort, condominium and related activities and services ("Covered Services"), and in connection with the promotion and sale of the Covered Services."  A copy of that agreement is attached hereto as Exhibit A.

28.     According to the express terms of that Agreement, all uses of the CHARLIE PALMER HOTEL trademark "in conjunction of boutique hotel, resort, condominium and related activities and services" are defined as "Covered Services."  And under the license agreement, PCCH has the "exclusive right to use and sublicense the Trademark in connection with the Covered Services."  Because of Palmer's celebrity chef status, the Parties intended Covered Services to include restaurant, bar and catering services as reflected by Palmer's 2011 USPTO application for CHARLIE PALMER HOTEL, (Ser. No. 85405856), expressly describing its goods and services as "Hotel, motel, restaurant, bar, and catering services."

29.     Because the Parties to the license agreement intended to use the CHARLIE PALMER trademark in connection with hotels, restaurants, bars and catering, after May 2007 the license agreement was modified to include all use of the trademark CHARLIE PALMER for hotels, restaurants, bars and catering, was subject to PCCH's exclusive rights, according to the terms of the Parties' 25-year exclusive license agreement (License Agreement).

COMMINS & KNUDSEN
PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

COMPLAINT

30.     At the same time it filed for CHARLIE PALMER HOTEL in 2011, Charlie Palmer Enterprises also filed CHARLIE PALMER, (Serial No. 85404997), in International Class 43, for "restaurant bar and catering services."  Palmer's personal written consent was again provided to Palmer Enterprises to use his name as a trademark.  The "date of first use" identified for the '4997 application is May 2007, the date of the written PCCH License Agreement.

31.     With those key trademark applications in place, Kaufman, Garay and Palmer purchased the Mystic Hotel in San Francisco in 2011, immediately re-branding it the MYSTIC HOTEL BY CHARLIE PALMER, and developed it into the first PCCH CHARLIE PALMER-branded hotel and restaurant.  Today, the MYSTIC HOTEL BY CHARLIE PALMER is a modern 82-room boutique hotel with a restaurant and lounge in the heart of San Francisco.

32.     In 2014, Kaufman, Garay and Palmer, along with equity investors, purchased the Harvest Inn Napa Valley, and re-branded it HARVEST INN BY CHARLIE PALMER. It became the second CHARLIE PALMER-branded hotel resort and restaurant.  Today, Harvest Inn is a 78- room hotel, resort property and restaurant.

33.     Through the development and operation of these two properties, the Parties generated national good will associated with the CHARLIE PALMER trademark, and a distinct quality associated with the brand that was unique to these operations.  Since 2007, CCH and Mill Creek on behalf of PCCH, have searched in major cities across the country for additional CHARLIE PALMER branding and licensing opportunities.

B.     Palmer's 2011 Decision To Interfere With The CHARLIE PALMER License

34.     Plaintiff is informed and believes that, unbeknownst to Plaintiff, in 2011 Palmer hatched a scheme, using a matrix of his wholly-owned or controlled business entities, to

COMMINS & KNUDSEN
PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

- 8 -

profit from using the CHARLIE PALMER brand in the same space as PCCH to (1) deprive
PCCH of the contract benefits to which it was entitled under the Licensing Agreement for
CHARLIE PALMER in the restaurant, hotel, bar and catering market; (2) tortiously to interfere
in PCCH's exclusive licensing rights; (3) materially to mislead the public by suggesting common
ownership and control of the 18 restaurants and three hotels identified on the CHARLIE
PALMER GROUP website (www.charliepalmer.com); and (4) personally to profit from the use
and licensing of the CHARLIE PALMER brand in the restaurant, hotel, bar and catering market
to the detriment of the brand, the confusion of the public, and in violation of PCCH's exclusive
license rights.

35.     In furtherance of this scheme, on August 24, 2011, Eatwell Enterprises,
Charlie Palmer Group, Palmco Management, 61 Restaurant Corp., 34 Equities Ltd, Palmer
Enterprises, and Aureole Investment LP collectively filed a USPTO application for the brand
CHARLIE PALMER GROUP, in International Class 35, (Reg. No. 4287600), for "business
management assistance in the establishment and/or operation of restaurants, retail stores and
hotels."  The date of first use for this brand is the same date as the May 2007 License
Agreement.)

36.     Through the CHARLIE PALMER GROUP, to the exclusion of PCCH,
Palmer is using the CHARLIE PALMER brand on the Charlie Palmer Group website
www.charliepalmer.com, to promote the services of 18 restaurants, as well as three boutique
hotels, the Mystic Hotel, The Harvest Inn and the Hotel Healdsburg.  The Charlie Palmer Group
claims that Palmer and it have been "building a company of restaurants and hotels filled with
consummate professionals who are all passionate about three things:  food, beverage, and most
importantly, hospitality."  The Charlie Palmer Group website maintains a link to "Careers" at any
one of the 18 restaurants and three hotels, as well as links to each of those businesses.  Although
the MYSTIC HOTEL BY CHARLIE PALMER, THE BURRIT TAVERN, THE HARVEST
INN BY CHARLIE PALMER, and THE HARVEST TABLE are each prominently displayed on

COMMINS & KNUDSEN
PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

its website, the CHARLIE PALMER GROUP fails to mention PCCH, or to acknowledge PCCH's 25-year exclusive CHARLIE PALMER license, instead falsely representing to the public that all 18 restaurants, bars and three hotels are under common ownership and control.

37.     Plaintiff is informed and believes that members of the Charlie Palmer Group and Palmer-related Defendants have been improperly profiting from the use of the CHARLIE PALMER trademark for hotels, restaurants, bar and catering services to the detriment of PCCH.

38.     Palmer's false statement, through the Charlie Palmer Group that all 21 of these hotel, bar, catering and restaurant service businesses are affiliated, connected or associated, and all are authorized to use the CHARLIE PALMER name, ignores the distinct ownership and management of these businesses, and misrepresents the nature, characteristics and qualities of the CHARLIE PALMER brand in a way that is likely to cause competitive or commercial injury to Plaintiff.

39.     In addition, in further and absolute disregard for PCCH's exclusive license rights, Palmer is planning to open a CHARLIE PALMER restaurant in a new boutique hotel in downtown Napa to directly compete with the HARVEST INN BY CHARLIE PALMER and the HARVEST TABLE.  The soon-to-be-opened Archer Hotel in Napa, https://archerhotel.com/napa, in the heart of the California wine company (just a few miles from the Harvest Inn), claims that it will be "accepting reservations" November 1, 2017.

40.     Plaintiff is informed and believes that Palmer is intentionally confusing the public, by associating the Archer Hotel and its CHARLIE PALMER restaurant with the HARVEST INN BY CHARLIE PALMER, to diminish sales at the HARVEST INN BY CHARLIE PALMER, to reduce the property value, causing PCCH to fail, so that he and the Charlie Palmer Group can take over PCCH's business.

COMPLAINT

41.     Because Mill Creek's 50 percent co-management of PCCH precluded it from providing Notification of Infringement to Palmer Enterprises pursuant to paragraph 4.1 of the Licensing Agreement, Plaintiff delivered that notice to Palmer Enterprises on September 25, 2017.  Because Plaintiff is informed and believes that Palmer Enterprises is facilitating the third-party infringement alleged herein, Plaintiff alleges that soliciting Palmer Enterprises' consent under the License Agreement would be futile and should be excused as a matter of law.  Pursuant to the License Agreement:

> If Licensor elects not to act on Licensee's notification under [sic]
> Section 6.2 and Licensee determines that such enforcement or
> action is necessary or desirable for Licensee's right to use the
> Trademark as provided under this Agreement, then Licensee may,
> at Licensee's expense with counsel of its choice and after obtaining
> Licensor's approval, *which approval shall not be unreasonably*
> *withheld or delayed*, shall take any such action as Licensee deems
> necessary or desirable to enforce the Trademark and Licensee shall
> be entitled to retain all recoveries therefrom.
> [License Agreement, paragraph 4.2, emphasis added.]

Because for these reasons PCCH has not provided Palmer Enterprises with Notification of Infringement, and Palmer Enterprises is expected to unreasonably withhold its approval to for this action, these requirements should be excused as a matter of law.

## FIRST CLAIM FOR RELIEF

(Federal Unfair Competition, 15 U.S.C. §1125(a), by PCCH against Palmer, Eatwell Enterprises, Charlie Palmer Group, Palmco Management, 61 Restaurant Corp., 34 Equities Ltd, Aureole

COMMINS & KNUDSEN
PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

Investment LP, LodgeWorks Partners L.P., LodgeWorks Partners Corporation, Dry Creek Kitchen LLC and RLJ Lodging Trust)

42.    Plaintiff realleges the allegations in Paragraphs 1-41, and incorporates them by reference as though fully set forth here.

43.    On the CHARLIE PALMER GROUP website, Defendants made false and misleading statements of fact while using the CHARLIE PALMER trademark in commerce to sell and promote hotel, restaurant, bar, and catering services.

44.    Defendants' false and misleading statements did deceive, or are likely to deceive the public in a material way.

45.    Defendants' actions were and are conducted through interstate commerce.

46.    Defendants' actions have caused and are likely to cause competitive or commercial injury to Plaintiff.

Therefore, Plaintiff seeks relief as set forth below.

## SECOND CLAIM FOR RELIEF

(California Unfair Competition, Cal. Bus. & Prof. Code §17200 by PCCH against Palmer, Eatwell Enterprises, Charlie Palmer Group, Palmco Management, 61 Restaurant Corp., 34 Equities Ltd, Aureole Investment LP, LodgeWorks Partners L.P., LodgeWorks Partners Corporation, Dry Creek Kitchen LLC and RLJ Lodging Trust)

47.    Plaintiff realleges the allegations in Paragraphs 1- 46, and incorporates them by reference as though fully set forth here.

- 12 -

COMPLAINT

48.     Defendants' use of the CHARLIE PALMER mark and name as described herein constitutes unlawful, unfair, or fraudulent business practices in violation of section 17200, *et seq.*, of the California Business & Professions Code and California common law.

49.     By reason of such wrongful acts Plaintiff has been, is being and will be in the future deprived of the profits and benefits of business relationships, agreements, and transactions with various customers, prospective customers, or suppliers, and Defendants have wrongfully obtained such profits and benefits in an amount to conform to proof at trial.

50.     As a direct and proximate result of Defendants' wrongful acts, Plaintiff has suffered and will continue to suffer substantial pecuniary losses and irreparable injury to its business reputation and goodwill.  As such, Plaintiff's remedy at law is not adequate to compensate for injuries inflicted by Defendants.  Accordingly.  Plaintiff is entitled to temporary, preliminary and permanent injunctive relief.

Therefore, Plaintiff seeks relief as set forth below.

### THIRD CLAIM FOR RELIEF

(California Unfair Competition, Cal. Bus. & Prof. Code §17500 by PCCH against Palmer, Eatwell Enterprises, Charlie Palmer Group, Palmco Management, 61 Restaurant Corp., 34 Equities Ltd, Aureole Investment LP, LodgeWorks Partners L.P., LodgeWorks Partners Corporation, Dry Creek Kitchen LLC and RLJ Lodging Trust)

51.     Plaintiff realleges the allegations in Paragraphs 1-50, and incorporates them by reference as though fully set forth here.

- 13 -

COMPLAINT

COMMINS & KNUDSEN
PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

52.     Defendants' use of the CHARLIE PALMER mark and name as described herein constitutes untrue or misleading advertising that is known by Defendants to be untrue or misleading in violation of section 17500, *et seq.* of the California Business & Professions Code.

53.     By reason of such wrongful acts, Plaintiff has been, is being and will be in the future, deprived of the profits and benefits of business relationships, agreements, and transactions with various customers, prospective customers, or suppliers, and Defendants have wrongfully obtained such profits and benefits in an amount to conform to proof at trial.

54.     As a direct and proximate result of Defendants' wrongful acts, Plaintiff has suffered and will continue to suffer substantial pecuniary losses and irreparable injury to its business reputation and goodwill.  As such, Plaintiff's remedy at law is not adequate to compensate for injuries inflicted by Defendants.  Accordingly, Plaintiff is entitled to temporary, preliminary and permanent injunctive relief.

Therefore, Plaintiff seeks relief as set forth below.

**FOURTH CLAIM FOR RELIEF**

(Common Law Unfair Competition by PCCH against Charlie Palmer, Eatwell Enterprises, Charlie Palmer Group, Palmco Management, 61 Restaurant Corp., 34 Equities Ltd, Aureole Investment LP, LodgeWorks Partners L.P., LodgeWorks Partners Corporation, Dry Creek Kitchen LLC and RLJ Lodging Trust)

55.     Plaintiff realleges the allegations in Paragraphs 1- 54, and incorporates them by reference as though fully set forth here.

56.     At the time Palmer Enterprises entered into the Licensing Agreement for the use of CHARLIE PALMER in the hotel and restaurant space, Palmer Enterprises and Palmer

COMMINS & KNUDSEN
PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1   were already operating a number of restaurants that used that mark.  Thus, at the time the License

2   Agreement was entered into, Plaintiffs and Defendants were competitors for business using that

3   mark.

4

5             57.     Defendants acted unlawfully by continuing thereafter to use the CHARLIE

6   PALMER mark in violation of the License Agreement, and in violation of the Lanham Act.

7             58.     As a direct and proximate result of Defendants' use of the mark, Plaintiff

8   has been damaged in an amount to be proved at trial.

9

10          Therefore, Plaintiff seeks relief as set forth below.

11

12                  **FIFTH CLAIM FOR RELIEF**

13         (Breach of Licensing Contract by PCCH against Charlie Palmer Enterprises)

14

15             59.     Plaintiff realleges the allegations in Paragraphs 1-58, and incorporates

16   them by reference as though fully set forth here.

17

18             60.     PCCH has performed all obligations under the License Agreement, except

19   those obligations PCCH was prevented or legally excused from performing.

20

21             61.     Palmer Enterprises breached the License Agreement by authorizing to

22   third parties the use of the CHARLIE PALMER brand for hotels, restaurants, bars and catering

23   during the exclusive license period.

24

25             62.     As a direct and proximate result of the breaches of contract by Charlie

26   Palmer Enterprises, PCCH has suffered damages in an amount be proven at trial.

27

28          Therefore, Plaintiff seeks relief as set forth below.

COMPLAINT

COMMINS & KNUDSEN
PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

1

## SIXTH CLAIM FOR RELIEF

(Breach of the Covenant of Good Faith and Fair Dealing by PCCH against Charlie Palmer Enterprises)

63.      Plaintiff realleges the allegations in Paragraphs 1-62, and incorporates them by reference as though fully set forth here.

64.      PCCH and Palmer Enterprises entered into the 25-year exclusive License Agreement;

65.      PCCH did all, or substantially all of the significant things that the contract required it to do, or it was excused from having to do those things.

66.      All conditions required for Palmer Enterprises' performance have occurred or were excused.

67.      Palmer Enterprises unfairly interfered with PCCH's right to receive the benefits of the contract.

68.      PCCH was harmed by Palmer Enterprises' conduct.

Therefore, Plaintiff seeks relief as set forth below.

///

///

///

- 16 -

COMMINS & KNUDSEN
PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

COMPLAINT

## SEVENTH CLAIM FOR RELIEF

(Tortious Interference With Contract by PCCH against Palmer, Eatwell Enterprises, Charlie Palmer Group, Palmco Management, 61 Restaurant Corp., 34 Equities Ltd, Aureole Investment LP, LodgeWorks Partners L.P., LodgeWorks Partners Corporation, Dry Creek Kitchen LLC and RLJ Lodging Trust)

69.     Plaintiff realleges the allegations in Paragraphs 1-68, and incorporates them by reference as though fully set forth here.

70.     The License Agreement is a contract between PCCH and Palmer Enterprises;

71.     Defendants knew of the License Agreement and Plaintiff's 25-year exclusive rights to use the CHARLIE PALMER trademark for hotel, restaurants, bar and catering services, and its likelihood of future economic benefit;

72.     Defendants intended to disrupt the performance of the License Agreement, and to cause Palmer Enterprise to breach the License Agreement;

73.     Defendants' conduct prevented performance of the License Agreement, and made performance more expensive or difficult;

74.     PCCH was harmed as a proximate result of Defendants' Conduct.

75.     Defendants' conduct was a substantial factor in causing PCCH's harm.

Therefore, Plaintiff seeks relief as set forth below.

- 17 -

COMMINS & KNUDSEN
PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

# PRAYER

THEREFORE, Plaintiff prays for the following relief:

1.    For preliminary and permanent injunctive relief enjoining the Archer Hotel, the Charlie Palmer Group, and other Palmer-related Defendants from using the CHARLIE PALMER trademark for hotel, restaurant, bar and catering services in violation of the PCCH 25-year License Agreement;

2.    For a constructive trust;

3.    For damages according to proof at trial;

4.    For recovery its reasonable attorneys' fees;

5.    For costs of suit; and

6.    For all other relief that the Court may deem just and proper.

DATED:  September 25, 2017.

COMMINS & KNUDSEN
Professional Corporation

By: _____
Kit Knudsen
Attorneys for Plaintiff
City-Core Hospitality, LLC

COMMINS & KNUDSEN
PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

- 18 -

# EXHIBIT A

## MASTER TRADEMARK LICENSE AGREEMENT

This Trademark License Agreement (this "Agreement") is dated as of May _____, 2007 (the "Effective Date") by and between Charles Palmer Enterprises, Inc. a New York corporation, having its principal place of business at 34 East 61st Street, New York, New York 10021 ("Licensor") and Palmer City-Core Hotels, LLC, a Delaware limited liability Company, having its principal place of business at 2352 Post Street, Suite 200, San Francisco, California 94115 ("Licensee").

WHEREAS, Licensor is the holder of all right, title and interest in and to the service mark CHARLIE PALMER HOTEL ("Trademark") for use in conjunction with boutique hotel, resort, condominium and related activities and services ("Covered Services"), and in connection with the promotion and sale of the Covered Services and

WHEREAS, Licensee is desirous of using said Trademark in conjunction with the Covered Services.

NOW THEREFORE, in consideration of the mutual covenants, representations and promises herein contained, the parties hereby agree as follows:

1.    License.

      License Grant.  Subject to the terms of this Agreement, Licensor grants to Licensee the exclusive right to use and sublicense the Trademark in connection with the Covered Services in accordance with the terms set forth in this Agreement. This License shall have an initial term of 25 years (the "Initial Term") automatically renewable in five-year increments unless the parties mutually agree to terminate this License prior to the expiration of the Initial Term or any extension thereof. Licensee agrees to provide Licensor with a copy of any executed sublicense agreements within 30 days of execution. Licensor further grants to Licensee a non-exclusive right to use and register domain names incorporating the Trademark.

2.    Restrictions on Use.

      2.1 Use with the Services.  Licensee shall use the Trademark solely in connection with the Covered Services and not for any other goods and services. Licensee shall not alter or deface the Trademark nor join any name, word, design, or mark with the Trademark so as to form a new mark

      2.2 Use Inures to Licensor's Benefit.  Licensee acknowledges that Licensor owns the Trademark and will not at any time do or cause to be done any act or thing contesting or in any way impairing or tending to impair any part of Licensor's right, title and interest in the Trademark.  Licensee acknowledges that all use of the Trademark by Licensee shall inure to the benefit of Licensor.

      2.3 No Registration or other Representation of Ownership.  Licensee agrees not to register or attempt to register the Trademark, or any similar mark as a trademark, service mark, Internet Domain name, or trade name, with any domestic or foreign governmental or

quasi-governmental authority, without Licensor's prior approval. Licensee shall not represent that it is the owner of or has any right, title, or interest to the Trademark. Licensee shall never challenge Licensor's ownership or the validity of the trademark or any application or registration thereof.

3.    Quality Control

3.1 Quality Standards.  Licensee shall use the Trademark only in connection with the Covered Services provided in accordance with the guidance and directions furnished to Licensee by Licensor, or its representatives or agents, from time to time, if any, but always the quality of the Covered Services shall be satisfactory to Licensor or as specified by it.  Licensee agrees that the quality of the Covered Services shall be of high quality consistent with the prestige and reputation associated with the Trademark.  Licensor shall use reasonable discretion in determining whether or not Licensee has met or is meeting the standards of quality so established.

3.2 Inspection.  Licensee will permit duly authorized representatives of Licensor to inspect any service sites at all reasonable times, for the purpose of ascertaining or determining compliance with Paragraph 3.1 hereof.

3.3 Marking.  Whenever Licensee uses the Trademark on or in connection with the Covered Services on advertising, promotional or display materials or a service site, Licensee shall place the ™ or ® symbol (as appropriate) adjacent the Trademark and shall state that the Trademark is "owned by Charles Palmer Enterprises, Inc." Licensor shall inform Licensee in writing with regard to which symbol is to be used by Licensee. Licensee shall determine in its sole discretion if and when a statement of ownership by Charles Palmer Enterprises, Inc. shall be required under any sublicense.

4.    Third party Infringement.

4.1 Notification of Infringement.  Each party agrees to provide written notice to the other party promptly after becoming aware of any infringement or unauthorized use of the Trademark.

4.2 Licensor's Right to Prosecute.  Licensor shall have the right at its own expense, but not the obligation, after providing reasonable notice to Licensee, to take such action as Licensor may deem necessary or desirable to enforce Licensor's rights in the Trademark. Any such action shall be at Licensor's sole cost and expense, with counsel of its choice, and Licensor shall be entitled to retain all recoveries therefrom. This provision shall not create any obligation on the part of Licensee to police infringements of the Trademark. If Licensor elects not to act on Licensee's notification under Section 6.2 and Licensee determines that such enforcement or action is necessary or desirable for Licensee's right to use the Trademark as provided under this Agreement, then Licensee may, at Licensee's expense with counsel of its choice and after obtaining Licensor's approval, which approval shall not be unreasonably withheld or delayed, shall take any such action as Licensee deems necessary or desirable to enforce the Trademark and Licensee shall be entitled to retain all recoveries therefrom. If Licensor does not indicate its approval or disapproval within 15 business days, Licensor's approval shall be deemed granted.

- 2 -

4.3 <u>Cooperation</u>.  Both parties agree to cooperate with the other in any action under this Section.

5.      <u>Indemnification</u>.  Licensor assumes no liability to Licensee or to third parties with respect to the Covered Services offered by Licensee under the Trademark and Licensee shall indemnify Licensor against losses incurred to claims of third parties against Licensor involving performance of the Licensee's Covered Services.

6.      <u>Termination</u>.

6.1 <u>Upon Written Notice</u>.  In the event of the breach by Licensee of any of the terms and conditions of this Agreement, Licensor shall have the right to terminate this Agreement thirty (30) days after giving written notice thereof to Licensee, and Licensee has not remedied the situation to Licensor's reasonable satisfaction within such thirty (30) day time period.  On termination of this Agreement, Licensee will cease and desist from all further use of the Trademark in any way and will deliver up to the Licensor, or its duly authorized representatives, all material and papers upon which the Trademark appears, change the name of the premises at the Service Site, and furthermore, Licensee will not at any time adopt or use, without the Licensor's prior written consent, any word or mark which is likely to be similar to or confusing with the Trademark.

6.2 <u>Bankruptcy or Sale</u>.  If Licensee makes any assignments of assets or business for the benefit of creditors, or a trustee or receiver is appointed to conduct its business or affairs, or it is adjudged in any legal proceeding to be either a voluntary or involuntary bankruptcy, then the rights granted herein shall forthwith cease and terminate without prior notice or legal action by Licensor.

6.3 <u>Relief</u>.  Each party acknowledges that the other will suffer great and irreparable harm as a result of the breach of any covenant or agreement to be performed under this Agreement other than the covenant to make monetary payments, and whether such breach occurs before or after termination, each party acknowledges that the non breaching party shall be entitled to an injunction or other equitable relief to restrain it from such breach.  Both parties waive any claim or defense that the other has an adequate remedy at law. The foregoing is in addition to any and all remedies at law that either party may have.

7.      <u>Notices</u>.

Any notice provided for in this Agreement shall be considered as properly given if personally delivered or sent by nationally recognized next business day delivery service for next business day delivery, duly addressed as follows:

If to Licensor: Charles Palmer Enterprises, Inc.
        34 East 61st Street
        New York, New York 10021

If to Licensee: Palmer City-Core Hotels, LLC
        2352 Post Street, Suite 200

San Francisco, California 94115

8.    <u>Counterparts</u>.  This Agreement may be executed by original signature, facsimile or other electronic transmittal of a manual signature and in any number of counterparts, each of which shall be deemed to be an original as against any party whose signature appears thereon, and all of which shall together constitute one and the same instrument.  This Agreement shall become binding when one or more counterparts hereof, individually or taken together, shall bear the signatures of all of the parties reflected hereon as the signatories.

**IN WITNESS WHEREOF,** each party to this Agreement has caused it to be executed as of the date first set forth above.

LICENSOR:

**CHARLES PALMER ENTERPRISES, INC.**

By: _____
        Charles R. Palmer, President

LICENSEE:

**PALMER CITY-CORE HOTELS, LLC**

By: City-Core Hospitality, LLC, Managing Member

By: City-Core Development, Inc., Manager

    By: _____
            Richard H. Kaufman, President

By: Mill Creek Hospitality LLC, Managing Member

By: _____
        Charles R. Palmer, Manager